UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RANDALL PARKER,

    Plaintiff,

v.                                                     Case No. 5:22-CV-679-WFJ-PRL

UNITED STATES OF AMERICA

    Defendant.
_____/

## ORDER

Before the Court is Defendant United States of America's Motion for Summary Judgment. Dkt. 32. Plaintiff Randall Parker has responded. Dkt. 35. Upon careful consideration, the Court grants the United States's Motion.

**BACKGROUND**

### I. Factual Background

Plaintiff is a federal prisoner who suffers from diabetes and high blood pressure. Dkt. 14 at 6. In late October 2021, while housed at USP Coleman 2, he noticed a painful corn growing on his toe. *Id.* Plaintiff alleges that he immediately submitted medical "cop-outs" for Bureau of Prisons ("BOP") medical staff to assess him. *Id.*

On November 1, 2024, Ms. Flagg, a nurse employed by the BOP, responded to Plaintiff's cop-out, instructing him to monitor the call-out sheet. *Id.* Plaintiff claims that he monitored the call out sheet for over thirty days but was not placed on

the list. *Id.* Plaintiff also claims that he submitted additional cop-outs on November 1st and 11th, and on December 4th, 14th, 27th, and 28th. *Id.*

On November 16, 2021, BOP medical staff reviewed Plaintiff's medical records. Dkt. 32 at 2. The medical staff scheduled an appointment for Plaintiff on December 6, 2021, but later canceled the appointment due to a medical emergency at the time the appointment was to take place. *Id.* On December 10, 2021, Plaintiff informed his supervisor in Food Services that his leg and toe were hurting, and he was taken to the health services unit. *Id.* at 3. Nurse Flagg evaluated Plaintiff and determined that his condition was non-emergent at that time. *Id.*

On December 31, 2021, Plaintiff approached the Warden and informed him that he had been trying to get medical attention since October of the same year. Dkt. 14 at 7. After he saw the condition of Plaintiff's toe, the Warden allegedly called the Medical Department from his cell phone and ordered them to see Plaintiff immediately. *Id.* After evaluating his toe and noticing an odor as well as swelling, BOP medical staff immediately sent Plaintiff to the local hospital for observation. Dkt. 32 at 3. The hospital doctors diagnosed Plaintiff with an infection causing osteomyelitis of the left hallux and decided to remove the infected portion of the toe. *Id.*

On April 15, 2022, Plaintiff informed BOP medical staff that he had an infection on the second toe on his left foot, but that he was treating it with antibiotics,

and that it was getting better. Dkt. 32 at 5. Plaintiff was seen about a month later by medical staff for a follow-up to his medical labs and other complaints of flu-like symptoms. *Id.* During the medical exam, Plaintiff made no complaints of a second toe infection. *Id.*

On June 2, 2022, Plaintiff reported to health services with complaints of a second toe infection. *Id.* Plaintiff was reexamined the next day, and it was determined that he had suffered another diabetic ulcer on his toe, exhibiting a possible infection and osteomyelitis. *Id.* BOP medical staff immediately sent Plaintiff to the hospital for further evaluation and treatment. *Id.* Plaintiff's second toe was amputated, and he returned to Coleman on July 7, 2022. *Id.*

## II.     Procedural Background

On June 5, 2023, Plaintiff filed the instant complaint against the United States seeking damages for the loss of his toes. Dkt. 14 at 13. The United States has since filed a motion for summary judgment, construing Plaintiff's claim as one of medical malpractice. Dkt. 32 at 1. The United States contends that Plaintiff's failure to provide expert testimony to support his medical malpractice claim prevents him from establishing the necessary standard of care and causation elements under Florida law. *Id.* at 6.

On May 7, 2024, Plaintiff filed a response in opposition. *See generally* Dkt. 35. Plaintiff contends that his claim qualifies for the exception to Florida's expert

testimony requirement because the BOP's lack of care was so obvious that it could be understood by laypersons, and as such necessitates only the use of common sense and ordinary judgment. Dkt. 35 at 4. The core issue in this matter is whether Plaintiff's claim qualifies for the exception to Florida's expert testimony requirement.

## LEGAL STANDARD

On a motion for summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As such, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support

the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (quoting *Celotex*, 477 U.S. at 324).

If the moving party discharges its burden, the nonmoving party must then identify specific facts showing that there is a genuine issue of material fact. *Id.* (citing Fed. R. Civ. P. 56 (e)). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party and a fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen*, 121 F.3d at 646 (quoting *Anderson,* 477 U.S. at 248). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. Ultimately, summary judgment should be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## DISCUSSION

Under the Federal Tort Claims Act, the United States is liable for the negligence of federal employees acting within the scope of their employment if a private person under like circumstances would be liable under the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). Because the acts and omissions in this case

are alleged to have occurred in Florida, Florida law applies. *Zelaya*, 781 F.3d at 1322-25. Defendant urges the Court to grant summary judgment because Plaintiff did not put forth expert testimony, as required to establish a claim of medical malpractice under Florida law. For the reasons outlined below, the Court agrees.

**I.   Expert testimony is required to make out a claim of medical malpractice under Florida law.**

Florida Statutes define a medical malpractice claim as "a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a); *National Deaf Academy, LLC v. Townes*, 242 So. 3d 303, 309 (Fla. 2018). An action constitutes "medical care or services" when it "require[s] the use of professional judgment or skill." *Townes*, 242 So. 3d at 311.

To succeed on a medical malpractice claim, the plaintiff must establish the "prevailing professional standard of care" owed by the defendant, the defendant's breach of that standard of care, and the causal relationship between the breach and the damages claimed. *Id.* at 309 (citing Fla. Stat. § 766.102(1)); *see also Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984). Under Florida law, the prevailing professional standard of care is defined by the "level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102(1). "Due to the specialized knowledge necessary to show what a 'reasonably prudent' physician would consider 'acceptable and appropriate,' the

6

standard of care in medical malpractice cases is ordinarily established through expert testimony," *Jerrett v. United States*, No. 5:20-cv-134-KKM-PRL, 2022 WL599200, at *2 (first citing *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995); then citing *Chirillo v. Granicz*, 199 So. 3d 246, 252 (Fla. 2016)), unless the common sense exception applies, *Atkins v. Humes*, 110 So. 2d 663, 666 (Fla. 1959).

If a plaintiff cannot establish the applicable standard of care, it follows that the plaintiff also cannot prove a breach of that standard. *Whittaker v. Sanchez*, No. 19-13486, 2021 WL 4495808, at *3 (11th Cir. 2021) (citing *Stepien v. Bay Mem'l Med. Ctr.*, 397 So. 2d 333, 334 (Fla. Dist. Ct. App. 1981)). When a defendant demonstrates that the plaintiff cannot present evidence supporting the alleged negligence in the complaint, no genuine issue of material fact exists, and summary judgment will be granted in favor of the defendant unless the common sense exception applies. *Id.* (citing *Sims v. Helms*, 345 So. 2d 721, 724 (Fla. 1977)).

In the instant case, because Plaintiff failed to present expert testimony on the issue of the applicable standard of care, he cannot establish the essential element of negligence. Fla. Stat. § 766.102(1); *Atkins*, 110 So. 2d at 665. Plaintiff bears the burden of proving this element at trial, so summary judgment is owed to Defendant unless the common sense exception applies in this case. *Celotex*, 477 U.S. at 322; *see also Whittaker*, 2021 WL 4495808, at *3; *see also Cagle v. United States*, 738 Fed. Appx. 633, 639–40 (11th Cir. 2018) (unpublished).

## II.     The common sense exception does not apply.

Expert testimony is not required where the exercise of common sense and ordinary judgment are sufficient to establish medical malpractice. This exception only applies to cases where the medical malpractice claim involves the application or administration of an approved medical treatment. *Atkins*, 110 So. 2d at 666. The exception may not be used in cases where the alleged negligence concerns an incorrect diagnosis or the adoption of the wrong method of treatment. *Id.*

In the instant case, Plaintiff's first allegation concerns Nurse Flagg's alleged negligence in diagnosing the condition of his foot as a non-emergency. Dkt. 14 at 11. Thus, Plaintiff's first allegation, based on an incorrect diagnosis, clearly falls outside of the scope of the common sense exception established in *Atkins*.

Plaintiff's second allegation concerns the Medical Department's alleged negligence in treating his foot within an appropriate timeframe. *Id.* This allegation also falls beyond the scope of the exception, as it based on the improper method of treatment employed by Coleman's Medical Department. *See Sims*, 345 So. 2d at 723.

Since neither of the medical malpractice allegations in Plaintiff's complaint qualify for the common sense exception, Plaintiff is bound by Florida's expert testimony requirement for medical malpractice claims. *See Atkins*, 110 So. 2d at 665. Further, because the exception does not apply, Plaintiff's failure to put forth an expert dooms his case.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the United States's Motion for Summary Judgment (Dkt. 32) is **GRANTED**. The Clerk is directed to enter final summary judgment for Defendant, terminate any pending motions and deadlines, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on August 30, 2024.

> */s/ William F. Jung*
> **WILLIAM F. JUNG**
> **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record